# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

_____
)
**JUANA MONTANO-PÉREZ, et al.**                    )
                                                   )
    **Plaintiffs,**            ) **Civ. No.  3:08-cv-1015**
                                                   ) **JURY DEMAND**
                                                   )
**v.**                                             ) **Judge Trauger**
                                                   )
**DURRETT CHEESE SALES, INC., et al.**             )
                                                   )
    **Defendants.**            )
_____)


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER

  Plaintiffs seek a limited protective order under Fed. R. Civ. P. 26(c) and 30(d) prohibiting inquiry by Defendants into (1) Plaintiffs' immigration histories, including entry into the United States, applications for immigration relief, and immigration proceedings, and immigration status other than at the time of their employment with Durrett Cheese Sales, Inc., and Greg Durrett ("Durrett Defendants") and the incidents detailed in Plaintiffs' Complaint; (2) details of crimes allegedly committed by Plaintiffs other than the dates, locations, and existence of convictions admissible under the Federal Rules of Evidence; (3) Plaintiffs' work histories other than with the Durrett Defendants; and (4) information and documents related to Social Security Numbers or any documents used by Plaintiffs to obtain work.

  These four categories of information which Plaintiffs seek to protect are entirely irrelevant to the elements of the claims, defenses, and damages determinations involved in this case. Immigration status and history do not affect plaintiffs' coverage under the relevant civil

Case 3:08-cv-01015   Document 78   Filed 01/11/10   Page 1 of 21 PageID #: 841

rights laws or under the Constitution. Requests for detailed factual admissions beyond the existence of an admissible conviction are excessive and are unnecessary to conduct the witness impeachment contemplated by Fed. R. Evid. 609. As Plaintiffs do not seek back pay or front pay, any work histories other than with the Durrett Defendants would not affect the determination of their damages or the adjudication of their claims. Social Security numbers and the circumstances surrounding Plaintiffs' hiring are irrelevant to Plaintiffs' claims or damages and to Defendants' defenses. In addition to the irrelevance of Defendants' discovery in these areas, courts have consistently recognized the severe unfair prejudicial effect of inquiries like Defendants' and have granted protective orders barring such inquiries. Especially where, as here, Defendants have ample opportunity to impeach Plaintiffs as witnesses through Plaintiffs' voluntary disclosure of criminal convictions admissible under Fed. R. Evid. 609, Defendants' insistence that Plaintiffs provide redundant and detailed accounts of their guilt is excessive and poses significant potential to harass and chill Plaintiffs' assertion of their rights.

Allowing Defendants to explore irrelevant and highly sensitive areas of immigration status and history, information pertaining to hiring documents, non-Durrett work history, and detailed factual admissions relating to criminal convictions will have a chilling effect on Plaintiffs' ability to participate in this lawsuit. Such inquiries also have the potential to deter individuals who suffer similar retaliation in the future from seeking vindication of their rights in court. The protective order Plaintiffs seek would safeguard their ability to fully and effectively present their claims before this Court.

## FACTS

This case challenges Defendants' unlawful and retaliatory termination, arrest, detention, and reporting of Plaintiffs to immigration authorities in response to Plaintiffs' peaceful demands

2

that they receive weeks of unpaid minimum wages.  (Doc. 62, First Am. Compl. ¶¶ 60, 62–105.)

Plaintiffs allege that they were continually unpaid or underpaid while they were employed by the

Durrett Defendants and that after repeated requests for payment of wages due them, they

initiated a peaceful protest in the break room at Durrett's cheese plant on October 22, 2007.  (Id.

at ¶¶ 60, 62–71.)  The Durrett Defendants summarily terminated Plaintiffs' employment because

of their group protest of the Durrett Defendants' unlawful pay practices and then called the

Coffee County Sheriff's Department.  (Id. at ¶¶ 72–73.)  The Coffee County Defendants arrested

Plaintiffs on trespassing charges that were almost immediately dropped and then, in coordination

with Durrett Defendants, attempted to orchestrate Plaintiffs' deportation.  (Id. at ¶¶ 74–93.)

Plaintiffs suffered severe emotional distress due to this wrongful termination, arrest, detention,

and transfer into immigration custody.  (Id. at ¶¶ 95, 105, 201, 206–07.)

Plaintiffs assert violations of their rights under the Fair Labor Standards Act ("FLSA"),

National Labor Relations Act ("NLRA"), Sections 1981 and 1985, the Fourth Amendment, Title

VII of the Civil Rights Act of 1964, and the Tennessee Human Rights Act, as well as malicious

prosecution and intentional and negligent infliction of emotional distress.  Plaintiffs seek

emotional distress damages to make them whole for their suffering as a result of these violations

of their statutory and constitutional rights, as well as punitive damages and injunctive relief.

Plaintiffs do not seek reinstatement to work at Durrett Cheese Sales nor back pay for work that

they would have been permitted to perform but for Defendants' unlawful retaliation.

On June 17, 2009, the parties participated in a telephonic discovery conference with the

Court to discuss the disputed requests as required by the Practice and Procedure Manual for

Judges and Magistrate Judges for the Middle District of Tennessee Rule III(D)(3).  At that

conference, Plaintiffs received this Court's permission to move for a protective order with

respect to disputed issues raised by the Durrett Defendants' discovery requests and anticipated future requests by all Defendants pertaining to similar sensitive topics.  To allow for resolution of criminal proceedings involving Plaintiffs pending in the U.S. District Court for the Eastern District of Tennessee, discovery was stayed from July 20 to November 24, 2009.  (Docs. 44 & 52.)  Following expiration of the stay, Plaintiffs discussed outstanding disputed categories of inquiry with Defendant Greg Durrett and the Coffee County Defendants at various points between November 25 and December 22, 2009.  The parties were able to resolve some areas of disagreement, and anticipate that they will soon present a mutual stipulated order to the Court which is intended to protect all parties from discovery or dissemination of some types of sensitive and confidential information.  This Motion concerns certain areas of discovery directed to Plaintiffs by Defendants with regard to which the parties were unable to reach agreement.

## ANALYSIS

A protective order limiting inquiry into and dissemination of information and documents related to immigration status and immigration history, detailed factual admissions regarding criminal convictions, Social Security numbers and other hiring documents, and work histories other than with the Durrett Defendants is necessary and appropriate to protect Plaintiffs from unnecessary humiliation, embarrassment, and intimidation, and to ensure that Plaintiffs are not chilled in the assertion of their rights under the Constitution and humanitarian statutes.

Fed. R. Civ. P. 26(c) and 30(d) as well as established case law involving the civil rights of immigrant workers support Plaintiffs' Motion.  Rule 30(d) provides that if a deposition "is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court . . . may limit the scope and manner of the taking of the deposition as provided in Rule 26(c)."  Fed. R. Civ. P. 30(d)(4).  Rule 26(c) provides, in relevant

part, that to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" the court may, upon a showing of good cause by the moving party, make an order "that certain matters not be inquired into . . . ." Fed. R. Civ. P. 26(c)(4). District Courts thus have "the power to enter protective orders limiting discovery as the interests of justice require." Degen v. United States, 517 U.S. 820, 826 (1996).

Pursuant to Fed. R. Civ. P 26(c), the party seeking a protective order must show good cause. Courts balance the moving party's showing against the interests of the opposing party to determine whether good cause has been shown. Nemir v. Mitsubishi Motors Corp., 381 F.3d 540, 551 (6th Cir. 2004). Many courts have granted orders similar to the one Plaintiffs seek in this Motion to protect civil rights plaintiffs from undue prejudice and to ensure that they are able to assert their rights free of harassment and intimidation. See, e.g., Rivera v. NIBCO, Inc., 364 F.3d 1057, 1075 (9th Cir. 2004) (upholding protective order granted by a district court prohibiting all discovery into plaintiff's immigration status because of the chilling effect such discovery could have upon the ability of such plaintiffs to assert their rights under Title VII); In re Reyes, 814 F.2d 168, 170–71 (5th Cir. 1987) (issuing writ of mandamus in FLSA case to direct the trial court to withdraw its order compelling discovery of the plaintiffs' immigration status because such an order "could inhibit [plaintiffs] in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified"); Lozano v. City of Hazleton, 239 F.R.D. 397 (M.D. Penn. 2006) (court granted an order protecting the identity and immigration status of Doe plaintiffs because of the court's concern that fear of removal and community anti-immigrant sentiment would cause plaintiffs to abandon the constitutional rights suit); Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 503 (W.D. Mich. 2005) (in FLSA case, granting plaintiffs'

motion for protective order preventing disclosure of "identification documents and information regarding worker status, alien status, social security cards, visas, national origin, and alien identifications;" "[e]ach date and time that Plaintiffs have crossed the United States/Mexico border, including any visa or passport stamp record showing these border crossings; and [a]ny documents or information likely to lead to the discovery of Plaintiffs' immigration status").

Plaintiffs seek to enforce critical rights under Constitutional, statutory, and common law protections. The information Defendants seek is not relevant to determining whether or not these rights were violated by Defendants, nor is it relevant to a determination of emotional distress damages. Defendants will not be harmed or unduly burdened by a prohibition on discovery of this non-relevant information. If the requested protective order were entered, Defendants would still have discovery into the existence of criminal convictions admissible under the Federal Rules of Evidence and the narrow category of immigration information that is conceivably relevant to the merits of Plaintiffs' claims. Furthermore, discovery into the immigration status and history of Plaintiffs, any hiring-related documents and related information, work history other than with the Durrett Defendants, and detailed information related to crimes allegedly committed by Plaintiffs will only serve to intimidate and deter Plaintiffs from asserting their rights under the Constitution, several state and federal statutes, and the common law of Tennessee. Such discovery could further unduly disrupt Plaintiffs' ability to testify.

The pertinent case law and the strength of Plaintiffs' and the Court's interests in preventing inappropriate and potentially abusive discovery directed at immigrant litigants in civil rights cases far outweigh any interest Defendants may have in discovering such information. See, e.g., Rivera, 364 F.3d at 1066 (finding that discovery into immigration status and related

information imposed an undue burden on Title VII plaintiffs and outweighed defendant

employer's asserted interests in the discovery).

> **I. Plaintiffs' Immigration History and Status Is Irrelevant to Any Merits or Defenses to Plaintiffs' Claims and Disclosure of Such Information Will Chill Plaintiffs in the Exercise of Their Rights.**

Plaintiffs' interest in preventing disclosure of Plaintiffs' immigration status and history

substantially outweighs Defendants' interest in discovering such information. Although

Plaintiffs have agreed to disclose their immigration status during their employment by the

Durrett Defendants and at the time of the incidents alleged in their Complaint, Defendants have

not agreed to temporally limit broad discovery requests which, by their terms, seek discovery of

Plaintiffs' complete immigration history, including events which may have occurred many years

before and which have no conceivable relevance to the facts and claims at stake in this litigation.

For example, Defendant Greg Durrett has issued broad interrogatories seeking that Plaintiffs

disclose "each date on which you entered or stayed in the U.S. illegally; and whether you are still

in the U.S. illegally; and whether you have ever been deported from the U.S. or left voluntarily

upon threat of deportation and the date thereof." (Ex. 1 Interrog. No. 2 (sample of Def. G.

Durrett's First Set of Interrogs. & Reqs. for Produc.).) Defendant Durrett also seeks to discover

"[p]apers related to any application for a U.S. Visa or Green Card immigration papers." (Id. at

Req. for Produc. of Docs. No. 4.) His most recent interrogatories ask Plaintiffs: "Did you permit,

participate, or know that Shanna Dee Ramirez intended to use false personal identifying

information about you, such as false social security numbers, alien registration numbers, or any

other false information, in order to obtain work at Durrett Cheese Sales, Inc. or elsewhere?" (Ex.

4, Interrog. No. 1 (sample of G. Durrett's 3d. Interrogs. & Req. for Produc.).) Requests such as

these subject Plaintiffs to potential embarrassment, harassment, further retaliation and

intimidation.  Any of these effects may cause Plaintiffs to fear asserting their rights and to

withdraw from participation in the lawsuit.   Plaintiffs' interest in preventing discovery of this

sensitive information far outweighs any interest Defendants have in discovery thereof.

> A.    Information Sought by Defendants Is Irrelevant to the Determination of Whether
> Plaintiffs' Rights Were Violated and to the Valuation of Damages.

Courts have consistently found immigration status irrelevant to the assertion of rights

under civil and employment rights statutes.  See, e.g., Sure-Tan v. NLRB, 467 U.S. 883 (1984)

(NLRA applies to undocumented workers); United States v. Urrieta, 520 F.3d 569, 578 (6th Cir.

2008) (applying Fourth Amendment to suppress evidence introduced against undocumented

immigrant); Galaviz-Zamora, 230 F.R.D. at 502 (immigration status irrelevant to FLSA claims

or damages); Lozano, 239 F.R.D. at 547–48 (undocumented immigrants are protected by 42

U.S.C. § 1981); Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan, 518 F. Supp.

993, 1006 (S.D. Tex. 1981) (undocumented immigrants are protected by 42 U.S.C. § 1985); see

also Tenn. Code Ann. 4-21-102(14) (defining "person" for the purposes of the Tennessee Human

Rights Act without reference to immigration status).  Accordingly, numerous courts have issued

protective orders preventing discovery into immigration status and history of parties in

employment and civil rights cases.  See, e.g., Rivera, 364 F.3d at 1070, 1075 (upholding

protective order in Title VII case because immigration status was not "relevant to the

determination [of] whether a defendant has committed national origin discrimination under Title

VII."); In re Reyes, 814 F.2d at 171 (issuing a writ of mandamus in FLSA case to direct district

court to withdraw its order compelling discovery of the plaintiffs' immigration status); EEOC v.

First Wireless Group, Inc., No. 03-CV-4990, 2007 U.S. Dist. LEXIS 11893, at *13 (E.D.N.Y.

Feb. 20, 2007) (denying defendant's motion to set aside a protective order prohibiting discovery

into immigration status because such information was not relevant at the liability state of the

Title VII litigation); Cortez v. Medina's Landscaping, 2002 U.S. Dist. LEXIS 18831, at *2–3 (N.D. Ill. 2002) (denying motion to compel immigration status information because such status was not relevant to the FLSA claims at issue); Topo v. Dhir, 210 F.R.D. 76, 79 (S.D.N.Y. 2002) (granting protective order and noting that "at best, plaintiff's immigration status is a collateral issue not relevant to any material aspect of the FLSA case."); Flores v. Amigon, 233 F. Supp. 2d 462, 464–65 (E.D.N.Y. 2002) (granting protective order because discovery related to Plaintiff's immigration status was not relevant to FLSA claims and "even if it were, the potential for prejudice far outweighs whatever minimal probative value such information would have.").

Plaintiffs' immigration status and history are similarly irrelevant to their tort claims and damages. See, e.g., Romero v. Boyd Bros. Transp. Co., No. 93-0085-H, 1994 U.S. Dist. LEXIS 8609, at *5–6 (W.D. Va. June 14, 1994) (approving order in tort case in which magistrate judge "excluded the evidence [of plaintiff's undocumented status] based on the threat that a jury would consider Mr. Hurtado's alienage in deciding upon liability or assessing damages, contrary to the clear public policy of Virginia"); Pontes v. New Eng. Power Co., 18 Mass. L. Rep. 183, at *6–7 (Mass. Super. Ct. 2004) (holding that worker's immigration status did not affect determination of his damages in a tort suit); Tyson Foods, Inc. v. Guzman, 116 S.W.3d 233, 237, 44 (Tex. App. 2003) (upholding a jury award to an undocumented immigrant worker including damages for past and future mental anguish in a workplace tort suit over employer defendant's challenge claiming undocumented immigrants could not recover lost wages damages); Hernandez v. Paicius, 134 Cal. Rptr. 2d 756, 761 (Cal. Ct. App. 2003) (reversing trial court's denial of tort plaintiff's motion *in limine* to prevent mention at trial of his immigration status as an abuse of discretion and granting plaintiff a new trial in part due to defense counsel's reference to immigration status in his opening statement).

Immigration status and history are also irrelevant to the relief Plaintiffs seek in this case, which include damages for emotional distress, punitive damages, and injunctive relief requiring Defendants to comply with the laws at issue in the future.  In Singh v. Jutla, the court held that a worker whose employer sought his deportation after the worker asserted a claim for unpaid wages qualified for compensatory and punitive damages to make him whole for the damages flowing from the unlawful retaliation.  214 F. Supp. 2d 1056 (N.D. Cal. 2002); see also Renteria v. Italia Foods, Inc., No. 02 C 495, 2003 U.S. Dist. LEXIS 14698, at *19–20 (N.D. Ill. Aug. 21, 2003) (holding that undocumented workers suing for retaliatory termination in violation of the FLSA were eligible for compensatory damages).  Punitive damages and injunctive relief are also available without discovery of immigration status.  See Rivera, 364 F.3d at 1061 (upholding protective order barring discovery of immigration status in a Title VII suit seeking punitive damages and injunctive relief); Lozano v. City of Hazleton, 241 F.R.D. 252, 255 (M.D. Pa. 2007) (claims for injunctive relief from constitutional violation advanced while protective order precluded discovery of immigration status); Contreras v. Corinthian Vigor Ins. Brokerage, 25 F. Supp. 2d 1053, 1060 (N.D. Cal. 1998) (upholding workers' claim for punitive damages for defendant's retaliatory termination and reporting to immigration officials in violation of FLSA).

Immigration status and history are irrelevant to Plaintiffs' credibility as witnesses, and any conceivable relevance is significantly outweighed by the risk of unfair prejudice from such discovery.  See, e.g., David v. Signal Int'l, LLC, 257 F.R.D. 114, 124 (E.D. La. 2009) (barring inquiries into immigration status, current addresses, and employment since termination by the defendant employers in RICO, § 1981, § 1985, FLSA, and intentional or negligent infliction of emotional harm case, because "defendants' opportunity to test the credibility of plaintiffs does not outweigh the public interest in allowing employees to enforce their rights"); Galaviz-Zamora,

230 F.R.D. at 502–03; <u>Martinez v. Mecca Farms, Inc.</u>, 213 F.R.D. 601, 604–05 (S.D. Fla. 2002) (undocumented status irrelevant to plaintiffs' credibility and to FLSA claims).

Immigration history, including information such as applications for immigration relief or the dates of entry into the United States, is a component of immigration status and is equally irrelevant to Plaintiffs' claims and damages. This sensitive information is no more relevant than is one's status as a U.S. citizen, documented immigrant, or undocumented immigrant worker to the resolution of employment, tort, and civil rights claims. <u>See</u> <u>Galaviz-Zamora</u>, 230 F.R.D. at 503 (granting plaintiffs' motion for protective order preventing disclosure of "identification documents and information regarding worker status, alien status, social security cards, visas, national origin, and alien identifications;" "[e]ach date and time that Plaintiffs have crossed the United States/Mexico border, including any visa or passport stamp record showing these border crossings; and [a]ny documents or information likely to lead to the discovery of Plaintiffs' immigration status"). Defendants here seek these types of information which reveal or suggest the immigration status and other private information relating to Plaintiffs or their relatives and may expose them to risk of harm, intimidation, and unwarranted release of private and confidential information which may be contained in immigration applications, proceedings, or other history. <u>See, e.g.</u>, 8 C.F.R. §§ 103.20–103.36 (Department of Homeland Security regulations implementing privacy procedures for requesting immigration-related applications and other records); 8 C.F.R. § 103.34 (subjecting security of immigration records systems to the requirements of 28 C.F.R. § 16.54(i) (which states that employees shall "[m]aintain and use records with care to prevent the unauthorized or inadvertent disclosure of a record to anyone")). Release of this private information would make a finding for Plaintiffs on the merits no more or less probable and would not impact the measure of their damages.

**B.** **Discovery of Immigration Status and History Poses the Potential for a Powerful *In Terrorem* Effect.**

Courts have noted that discovery has a potential for abuse which "may seriously implicate privacy interests of litigants," and that "[a]lthough the Rule [26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35, n. 21 (1984); see also In re Sealed Case (Medical Records), 381 F.3d 1205, 1216 (D.C. Cir. 2004). Courts have granted protective orders precluding inquiries into immigration status and history because the "chilling" or "*in terrorem*" effect of the inquiries outweighs the probative value of the discovery.

Rule 26(c) is designed to prevent the inappropriate and potentially embarrassing, harassing and intimidating discovery sought by Defendants. In issuing protective orders in similar cases, courts have recognized that immigration status and history are a matter of private interest, the discovery of which is often intended to, or has the effect of, embarrassing, intimidating or harassing a party and subjecting her to shame, further retaliation, or anti-immigrant sentiment in the community. In In re Reyes, the Fifth Circuit issued a writ of mandamus ordering withdrawal of the district court's order compelling discovery into plaintiffs' immigration status in a FLSA case in part because of the "embarrassment and inquiry into [plaintiffs'] private lives which was not justified . . . ." 814 F.2d at 171; see also Rivera, 364 F.3d at 1065 ("The chilling effect such discovery [immigration status] could have on the bringing of civil rights actions unacceptably burdens the public interest."); David, 257 F.R.D. at 122 ("Even if current immigration status were relevant to plaintiffs' race/national origin discrimination, contract and tort claims, discovery of such information would have an intimidating effect on an employee's willingness to assert his workplace rights"); Rengifo v.

Erevos Enters., Inc., No. 06 Civ. 4266, 2007 U.S. Dist. LEXIS 19928, at *4 n.1 (S.D.N.Y. 2007) (in discrimination and tort case, "discovery of [immigration status] would have an intimidating effect on an employee's willingness to assert his workplace rights."); Avila-Blum v. Casa De Cambio Delgado, Inc., 236 F.R.D. 190, 192 (S.D.N.Y. 2006) (noting that inquiry into plaintiff's immigration status causes a "substantial social burden…on the individual involved."); Topo, 210 F.R.D. at 78 ("When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined.").

Courts and agencies have prohibited such discovery not only because of its possible deterrence of plaintiffs with meritorious claims, but also because of its potential for unduly disrupting plaintiffs' opportunity to testify and otherwise participate in their cases. The National Labor Relations Board (NLRB) has noted the chilling effect of an employer's issuance of subpoenas seeking the passports, Alien Registration Cards, and Employment Authorization Cards of workers planning to testify against the employer in NLRB proceedings. John Dory Boat Works, Inc., 229 NLRB 844, 852 (1977). The NLRB explicitly approved of an administrative law judge's decision to quash such subpoenas, reasoning that the information sought was irrelevant to credibility or any other issue and that the impact of the requests on the workers' ability to testify at the hearing "ranged from unsettling to devastating and certainly affected their ability to testify." Id.; see also EEOC v. City of Joliet, 239 F.R.D. 490, 493 (N.D. Ill. 2006) ("The intimidating effect of such conduct [inquiry into immigration status] is hard to exaggerate. This step alone might be sufficient to end the lawsuit regardless of the merits of the case."); De La O v. Arnold-Williams, No. CV-04-0192, 2006 U.S. Dist. LEXIS 76816, at *10 (E.D. Wash. Oct. 20, 2006) ("The Court finds compelling the concern…that requiring the Plaintiffs to disclose their immigration status would cause a chilling effect on similar civil rights

actions."); Galaviz-Zamora, 230 F.R.D. at 502 ("merely requesting information regarding the

employees' immigration status had demonstrable (and prejudicial) effect.") (citation omitted);

Topo, 210 F.R.D. at 78–79 ("[the] potential danger of deterring plaintiff from having her day in

court by inquiring into a non-relevant matter such as her immigration status is precisely the type

of 'oppression' Rule 26(c) was designed to prevent."); Liu v. Donna Karan Int'l, Inc., 207 F.

Supp. 2d 191, 193 (S.D.N.Y. 2002) (denying Defendant's request for discovery into plaintiff's

immigration status, noting that even if there was a confidentiality agreement "there would still

remain the danger of intimidation, the danger of destroying the cause of action and would inhibit

plaintiffs from pursuing their rights.") (citation omitted); Flores v. Albertsons, Inc., No. CV 01-

00515, 2002 U.S. Dist. LEXIS 6171, at *20 (C.D. Cal. Apr. 9, 2002) ("there is an *in terrorem*

effect to the production of such documents. It is entirely likely that any undocumented class

member forced to produce documents related to his or her immigration status will withdraw from

the suit rather than produce such documents and face…potential deportation.").

Many courts have recognized that allowing discovery into immigration status has a

chilling effect on the ability of both documented and undocumented immigrants to pursue their

legal rights. In Rivera, the Ninth Circuit upheld a district court's protective order barring inquiry

into a Title VII plaintiff's status because

> [g]ranting employers the right to inquire into workers' immigration status in cases like
> this would allow them to raise implicitly the threat of deportation and criminal
> prosecution every time a worker, documented or undocumented, reports illegal practices .
> . . . Even documented workers may be chilled by the type of discovery at issue here.
> Documented workers may fear that their immigration status would be changed, or that
> their status would reveal the immigration problems of their family or friends; similarly,
> new legal residents or citizens may feel intimidated by the prospect of having their
> immigration history examined in a public proceeding. Any of these individuals, failing to
> understand the relationship between their litigation and immigration status, might choose
> to forego civil rights litigation.

364 F.3d at 1065.  The Court further observed that "employers have a perverse inventive to ignore immigration laws at the time of hiring but insist upon their enforcement when their employees complain."  Id. at 1073.

As set forth in their Complaint, Plaintiffs have already suffered disparate hardship as a result of their efforts to enforce their rights, having been subjected to arrest and immigration detention and proceedings while workers who remained silent have not.  Plaintiffs have already indicated their willingness to disclose, in written discovery responses, their immigration status at the time of their employment with the Durrett Defendants and the arrest and detention incident to their terminations in October 2007.  The additional immigration-related discovery that Defendants persist in seeking, however, threatens to convert the discovery process into a redundant and intimidating exercise through which Plaintiffs must answer multiple irrelevant questions about their status.  Given that use of immigration status to retaliate against Plaintiffs is a major component of the retaliation already alleged, it is critical to Plaintiffs' ability to fairly pursue their claims that immigration history which does not relate to the employment and events at stake in this suit not be subject to inquiry, disclosure and dissemination.  Should Defendants be permitted unlimited examination of immigration status and history through discovery, Plaintiffs will be intimidated and deprived of a fair opportunity to testify and present their case.

**II.  Plaintiffs Show Good Cause for an Order Prohibiting Inquiry Regarding Their Social Security Numbers, Hiring-Related Documents, and Information Pertaining Thereto Because They Are Irrelevant and Likely to Unduly Harass Plaintiffs.**

Courts have consistently protected Social Security numbers and related hiring information from discovery because such information is irrelevant to the kinds of claims Plaintiffs assert in this case and is highly sensitive.  See, e.g., Baca v. Brother's Fried Chicken, No. 09-3134, 2009 U.S. Dist. LEXIS 42306, at *6 (E.D. La. May 13, 2009) (protecting plaintiffs

15

suing for wages and retaliation under FLSA from discovery of Social Security numbers, immigration status, and addresses); Montoya v. S.C.C.P. Painting Contractors, Inc., 530 F. Supp. 2d 746, 749–51 (D. Md. 2008) (Social Security numbers, dates of birth, and aliases are irrelevant to merits of employment claims); De La O, 2006 U.S. Dist. LEXIS 76816, at *12 ("For the same reasons the Court finds Plaintiffs' immigration status is protected, the Court finds Defendants are not entitled to ask Plaintiffs to disclose their Social Security numbers."); Galaviz-Zamora, 230 F.R.D. at 502–03 (protecting plaintiffs from discovery of social security cards and other hiring-related documents). Requests for these documents and Defendant Greg Durrett's inquiries into the provenance and use of such documents amount to backdoor attempts to elicit additional information regarding Plaintiffs' immigration status that bears no relevance to Plaintiffs' claims or damages. See discussion, supra at Section I.

### III. Plaintiffs Show Good Cause for an Order Prohibiting Inquiry into Plaintiffs' Work History Other than with Greg Durrett and Durrett Cheese Sales, Inc.

Plaintiffs do not claim that their damages include a subsequent inability to work for medical reasons, nor do they seek lost wages from any claim that would require mitigation of damages. Therefore, work they have performed for other employers is irrelevant to their damages as well as to their claims. "[A]n employment discrimination plaintiff does not open her entire work history up for discovery by the defendant as a matter of course; rather, the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defenses in the case at hand." Woods v. Fresenius Med. Care Group of N. Amer., No. 1:06-cv-1804, 2008 U.S. Dist. LEXIS 3756, at *5 (S.D. Ind. Jan. 16, 2008) (quashing defendant's subpoenas to plaintiff's past and current employers). In Woods, a Title VII discrimination and retaliation action, the court rejected the defendant's argument that contacting the plaintiff's current employer might reveal relevant evidence that "any emotional distress she is experiencing

was not caused by the Defendant, but rather by 'disciplinary, performance, attendance or other issues' in her current position," noting that the defendant was not entitled to use the discovery process to "fish around."  Id. at *6–7.

A number of courts have also noted the chilling effect and risk of retaliation from Defendants approaching current or other past employers in cases involving retaliation.  See, e.g., David, 257 F.R.D. at 36–39 ("any inquiry into plaintiffs' current immigration status, current residence and/or post-termination employment history will most assuredly strike paralyzing fear in the plaintiffs sufficient to chill any inclination they may have had to prosecute their pending claims"); EEOC v. Bice of Chi., 229 F.R.D. 581, 583 (N.D. Ill. 2005) (denying defendants' motion to compel workers to disclose "activities, including employment, before, during and after their employment with defendants").  The irrelevance of non-Durrett employment information and potential chilling effects of such inquiries weigh heavily in favor of a protective order.

### IV.  Plaintiffs Show Good Cause for an Order Protecting Them from Inquiries Related to Alleged Criminal Activities Not Admissible Under the Federal Rules of Evidence and Prohibiting Detailed Inquiry into Criminal Convictions.

Plaintiffs have indicated willingness to disclose the existence, dates, and locations of convictions of any felonies or misdemeanors involving truthfulness, including any recent convictions in the Eastern District of Tennessee related to use of false Social Security numbers and other documents to obtain work with the Durrett Defendants.  Defendants, however, have stated their intent to seek additional civilly-applicable "admissions" as to the factual basis related to each Plaintiff's guilty plea, as well as additional civilly-applicable "admissions" that precisely repeat the facts of each Plaintiff's indictment—factual allegations upon which Plaintiffs were not necessarily convicted.  Defendants seek broad-ranging discovery into the details of how Plaintiffs obtained work at Durrett Cheese well beyond the basic facts of Plaintiffs' convictions.

17

(Ex. 6 (letter from counsel for Def. G. Durrett to counsel for Pls., Dec. 16, 2009) ("We would further require an admission that the factual basis for the crime was that your client applied for a job at Durrett Cheese Sales and in support of his or her application, he or she provided the company with a fake social security card and alien registration card" and also declaring intent to ask two Plaintiffs who have not been indicted about their hiring at Durrett Cheese Sales)); (Ex. 4, Interrog. No. 1 (sample of G. Durrett's 3d. Interrogs. & Req. for Produc.) ("Did you permit, participate, or know that Shanna Dee Ramirez intended to use false personal identifying information about you, such as false social security numbers, alien registration numbers, or any other false information, in order to obtain work at Durrett Cheese Sales, Inc. or elsewhere?").)

These requests seek a level of detail well beyond the scope of the Federal Rules of Evidence. See Fed. R. Evid. 609(a). Fed. R. Evid. 609(a)(1) and (2) each make admissible "evidence that any witness has been convicted of a crime." If "evidence" that a witness has a prior criminal conviction were interpreted to limitlessly encompass information beyond the fact, date, location, and basic nature of a conviction, parties would be entitled to essentially retry a past criminal trial against a witness in a civil case by introducing factual bases, plea colloquies, affidavits, grand jury transcripts, indictments, and even tangible evidence or live witness testimony from prior criminal trials. Such an interpretation is inconsistent with Rule 609(a), as the name of a crime, the fact, date, and location of the conviction suffice as "evidence that any witness has been convicted." Fed. R. Evid. 609(a). While Rule 609 permits impeachment with the specified types of convictions, "[o]rdinarily, it is improper for the prosecution to examine into the details of the crime for which the accused was convicted. The cross-examination should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment. Care should be taken to protect the accused as far as possible from being convicted

because of past conduct and not the crime for which he is being tried." United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir. 1977). The method of proof of the admissible convictions is properly limited: "In proving the felony conviction on cross-examination, the United States Attorney may ask about the name of the crime, the time and place of conviction, and the punishment." United States v. Boyce, 611 F.2d 530 (4th Cir. 1979) (internal quotations omitted) (quoting Weinstein-Berger, Commentary on [Federal] Rules of Evidence, Vol. 3, § 609(03a) at 609-80.1-2 (1978)).

Defendants' requests regarding alleged criminal activity further amount to attempts to require Plaintiffs to admit to criminal activities beyond the scope of their convictions and which are totally irrelevant to their claims. Notably, the only non-supervisory Durrett employees to have been prosecuted criminally for unlawful efforts to obtain employment at Durrett Cheese are all Plaintiffs in this lawsuit.[1] None of Plaintiffs' claims require spotless records in order to be brought, and their conduct at the time of hiring is not relevant to any element of a claim or defense, or to the calculation of damages.

Beyond seeking irrelevant information, Defendants' discovery requests also risk undue harassment of Plaintiffs. Given that criminal charges for trespassing were used to retaliate against Plaintiffs from the outset, and given that subsequent deportation proceedings and criminal charges for document crimes have disproportionately affected Plaintiffs as opposed to non-complaining employees, the chilling effect of having to respond to Defendants' inquiries is powerful and has the potential to contaminate this litigation and intimidate Plaintiffs into dropping their claims. The proposed fishing expedition into any and all other employment

---

[1] Plaintiffs' attorneys have followed criminal proceedings of Plaintiffs being prosecuted in the Eastern District of Tennessee closely and are unaware of any other indictments of non-supervisory Durrett Cheese Sales workers. Based on relevant PACER searches, it appears that supervisor Shanna Ramirez is the only ex-Durrett employee who has been prosecuted for violations stemming from unlawful hiring of undocumented workers who is not a plaintiff in this lawsuit.

Plaintiffs may have had, mental states pertaining to their job applications, specific facts involved in the document crimes with which they were charged, and immigration-related conduct is improperly harassing and burdensome and unjustly converts a civil and employment rights suit into an ongoing and unlimited criminal investigation of the few former Durrett employees who dared to ask that they be paid for their work.

## CONCLUSION

Plaintiffs are seeking to protect confidential information that is irrelevant to the determination of whether Plaintiffs' rights were violated by the Defendants as well as to the measure of damages that Plaintiffs suffered. If broad discovery sought by Defendants of documents or information related to Plaintiffs' immigration status or immigration history is permitted, there is a real possibility that Plaintiffs will be unable to effectively participate in this lawsuit. Such an outcome would prevent this Court from hearing from important witnesses and hinder Plaintiffs' ability to fully present their claims. All categories of information which Plaintiffs here seek to protect are not only irrelevant to the claims and defenses involved in this case, but also could subject Plaintiffs to harassment and intimidation if disclosed. Such intimidation would thwart enforcement of the remedial civil rights laws and Constitutional protections under which Plaintiffs bring their claims. For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for a Protective Order.

Respectfully Submitted,

/s/ Thomas Fritzsche_____
Kristi L. Graunke
*Pro Hac Vice*
Georgia State Bar No. 305653
Mónica Ramírez
*Pro Hac Vice*
Florida State Bar No. 0711861
Thomas Fritzsche

*Pro Hac Vice*
Georgia State Bar No. 940482
Southern Poverty Law Center
Immigrant Justice Project
233 Peachtree St. NE, Suite 2150
Atlanta, GA 30303
Tel: (404)-521-5844
Fax: (404) 521-5845
kristi.graunke@splcenter.org
monica.ramirez@splcenter.org
tom.fritzsche@splcenter.org

Wade Cowan
Tennessee Bar No. 9403
150 Second Avenue North, Suite 225
Nashville, Tennessee 37201
Phone: 615-256-8130
Fax: 615-242-7853
E-mail: wcowan@dhhrplc.com