UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JUANA MONTANO-PÉREZ, et al. ) | |
| ) | |
| Plaintiffs, ) | Civ. No. 3:08-cv-1015 |
| ) | |
| v. ) | |
| ) | JURY DEMAND |
| DURRETT CHEESE SALES, INC., et al. ) | |
| Defendants. ) | Judge Trauger |

## AGREED ORDER

Pursuant to the terms of the August 26, 2010 settlement agreement between Plaintiffs Juana Montano Perez, Teresa Ayala Rosales, Luciana Moreno López, Flora Rivera Pablo, Mercedes Gómez Eugenio, Cirilo Castillo Amaro, Saraí Contreras Martínez, Dalila Contreras Martínez, María Ramírez Mendoza and María Cervantes Cano and Defendant Greg Durrett, this Court orders the following:

1. If any of the conditions specified in paragraphs 1 through 3 of the parties' August 26, 2010 settlement agreement are not timely met, Plaintiffs may seek entry of an agreed judgment in the amount of $75,000 in the United States Court for the Middle District of Tennessee;

2. Defendant Greg Durrett (hereinafter "Durrett") shall not retaliate against any current or future employees of, or individuals who work for, him and/or any businesses owned or controlled wholly or in part by him for asserting their rights under any federal, state or local laws. Further, Durrett will not direct or request that any employee, agent or third party engage in retaliation as set forth herein;

3. Durrett will not report any employees who work for him and/or for any businesses owned or controlled wholly or in part by him to any law enforcement agency (including but not limited to, immigration and other federal law enforcement authorities and the local sheriff or police department) because such employees have made complaints regarding wages or working conditions or engaged in non-violent protests conducted in break areas, other workplace areas, or anywhere on company premises in which the actual production work of the business is not actively taking place. Durrett agrees that he will not direct or request that any employee, agent or third party to engage in any of the activities outlined in this paragraph;

4. Durrett shall instruct all supervisors, managerial employees, or other individuals who perform supervisory or managerial duties for him and/or in any businesses owned or controlled wholly or in part by him that they may not retaliate against employees for asserting their rights under any federal, state or local laws;

5. Durrett shall ensure that all employees who work for him and/or for any businesses owned or controlled wholly or in part by him, including those who perform supervisory or managerial functions, shall be trained regarding their rights and obligations under the Fair Labor Standards Act (FLSA), National Labor Relations Act (NLRA), Title VII of the Civil Rights Act of 1964 as amended (Title VII), and, with regard to any businesses operating in Tennessee, the Tennessee Human Rights Act (THRA);

6. Durrett shall personally monitor, oversee and be responsible for the supervisory and management practices of any employees of his and/or in any businesses owned or controlled wholly or in part by him who conduct supervisory activities, including those who do so in relation to non-English speaking employees. Durrett shall personally monitor, oversee, and be responsible for ensuring a work environment that is free of unlawful discrimination, including

violations of Title VII and the THRA, violations of the FLSA, NLRA, and any other applicable federal, state, and local laws. As part of his oversight and responsibility for employees who supervise non-English speakers, Mr. Durrett shall obtain neutral interpretation and/or monitoring assistance from an individual who does not supervise the non-English speaking employees and who speaks the employees' primary language fluently;

7.  Durrett shall personally be available to receive complaints regarding wages and working conditions and shall designate at least two other managers or supervisors to receive complaints from employees who work for him and/or for any businesses owned or controlled wholly or in part by him. Durrett will make these designated managers' and his own availability to hear complaints known to all such employees. Durrett will obtain appropriate and neutral interpretation to enable employees with limited English proficiency to make complaints to him and/or the additional designated managers. Neither Durrett nor any other managers or supervisors who work for him and/or for any businesses owned or controlled wholly or in part by him will retaliate in any manner against any employee who makes any complaint concerning wages or working conditions, whether he determines the complaint to have been well-founded or not;

8.  Durrett shall offer any open positions at any businesses owned or controlled by him to Plaintiffs first, and shall give Plaintiffs hiring preferences for all positions for which they apply for which Plaintiffs are reasonably qualified;

9.  Durrett shall post a notice of the non-monetary aspects of this settlement agreement in a visible conspicuous location in any businesses owned or controlled wholly or in part by him, in English, Spanish, and any other languages spoken by employees at the site;

10. Durrett shall issue a written apology to Plaintiffs by September 22, 2010;

11. Plaintiffs and their counsel shall have a right to monitor Durrett's compliance with the non-monetary terms specified herein for five years following entry of this settlement agreement as follows:

   a. Greg Durrett will report on a biannual basis (February 1 and July 1 of each year) to Plaintiffs' counsel in writing regarding the number of employees employed by him and/or by any businesses managed, owned, or controlled wholly or in part by him;

   b. On a biannual basis (February 1 and July 1 of each year), Mr. Durrett will identify to Plaintiffs' counsel the location, position, title, qualifications required, and quantity of any and all job positions filled in the preceding six months by him or at any businesses managed, owned, or controlled wholly or in part by him;

   c. On a biannual basis (February 1 and July 1 of each year), Mr. Durrett will identify to Plaintiffs' counsel any persons or entities that provide interpretation, training, investigation services, and/or any other assistance to him or any businesses managed, owned, or controlled wholly or in part by him in order to comply with the terms of Plaintiffs' August 20 letter;

   d. On a biannual basis (February 1 and July 1 of each year), Mr. Durrett will furnish Plaintiffs' attorneys with any reports or other documentation provided to federal, state, or local entities concerning employees of any businesses managed, owned, or controlled wholly or in part by him. Such documentation includes, but is not limited to, 1099 forms related to contract labor, IRS reports and other payroll tax records, and unemployment and/or workers' compensation insurance reports;

e. On a biannual basis (February 1 and July 1 of each year), Mr. Durrett will furnish Plaintiffs' attorneys with copies of posters, flyers, training materials, notices, policy manuals, employee handbooks, and/or other documentation that show the extent of his compliance or non-compliance with the terms of the settlement agreement, including Plaintiffs' August 20, 2010 letter;

f. Within 30 days of any and all work stoppages, strikes, sit-ins, written or oral complaints, lawsuits, government investigations, and/or other complaints by people employed by Mr. Durrett and/or by any businesses managed, owned, or controlled wholly or in part by him, and of his or his business's response thereto, Mr. Durrett will inform Plaintiffs' counsel of the relevant event or events;

g. If Mr. Durrett and/or any businesses managed, owned, or controlled wholly or in part by him, employ more than three employees, Plaintiffs' counsel will have the rights to, on a biannual basis as scheduled through communication by Plaintiffs' counsel with Mr. Durrett or with a representative identified by him;

   i. Conduct an on-site inspection of payroll and personnel records regarding employees of Mr. Durrett and/or businesses he owns, manages, or controls in whole or in part, and, if necessary, to issue subpoenas to payroll companies, staffing companies, banks, or other third party entities involved in the personnel and payroll aspects of Mr. Durrett's business ventures to determine compliance;

   ii. Conduct an on-site inspection of employee break rooms and other common areas where information is or may be posted at work sites where

    employees of Mr. Durrett and/or businesses he owns, manages, or controls in whole or in part, work; and

    iii. Conduct voluntary interviews on working time outside the presence of Mr. Durrett or other management staff to evaluate Mr. Durrett's compliance with the terms of the settlement agreement.

  h. If Plaintiffs' counsel determines that subpoenas are necessary to determine compliance, Mr. Durrett will provide Plaintiffs' attorneys with the names and contact information for the relevant payroll companies, staffing companies, banks, or other third party entities or individuals who might have information sought by Plaintiffs within ten days of any request for such information;

  i. If it becomes necessary for Plaintiffs to issue subpoenas, hire computer experts, or take other extra measures to obtain records because Greg Durrett has failed to provide, destroyed, or allowed to be destroyed the documentation or information specified in paragraphs a through i, Greg Durrett will pay any costs associated with Plaintiffs' attorneys' efforts to obtain information that he could have provided.

 12. Plaintiffs shall be entitled to any costs and fees associated with enforcing any aspect of the settlement agreement in the event of breach by Durrett;

 13. This Court retains continuing jurisdiction to enforce any and all portions of the August 26, 2010 settlement agreement between Plaintiffs Juana Montano Perez, Teresa Ayala Rosales, Luciana Moreno López, Flora Rivera Pablo, Mercedes Gómez Eugenio, Cirilo Castillo Amaro, Saraí Contreras Martínez, Dalila Contreras Martínez, María Ramírez Mendoza and María Cervantes Cano and Defendant Greg Durrett.

So ordered this  29th   day of _____October_____, 2010

_____/s/ Aleta A. Trauger_____
Aleta Trauger, United States District Judge